Thank you. There was a motion to cite official authority. Do you have any objection to? No, your honor. Thank you. The motion will be granted. Thank you. The plaintiff Bruce Sharp, as of today, expects to be released from the penitentiary on April 16th of 2021. He's going to be 75 years of age. He's been locked up since 1970. The brief says 1988, but I think that was a typographical error. I'm sorry. He's been locked up since 1970? Seventy. Oh, since 1970. Okay. I apologize. When Mr. Sharp filed his case pro se, he was aware of the 2018 amendments to the unified 730 ILCS 5-3-6-3A1, which, under his reading, and as we, I think, persuasively argue in the brief, entitled him as a person who had been convicted of first-degree murder back in 1970 or 71 to sentence credit for educational accomplishment, for program participation. At the time Mr. Sharp filed his pro se complaint, the director had not adopted regulations to implement that statute, and Mr. Sharp, among other things, wanted the director to be compelled to issue those regulations. He wanted not only regulations, but he wanted credit, as he wanted credit. In his pro se case, he wanted the world. He wanted money. He wanted credit. He wanted immediate release. What we say he was entitled to was issuance of regulations. He's not entitled, in this case, to money or to immediate release. Under our reading of the 2018 statute, he would have been entitled to immediate release because he did an amazing amount of sentence credit of educational accomplishment. The legislature, in 2019, and it's effective January 1st of 2020, and that's the suggestion of additional authority, changed the statute. Again. Again. This change makes it absolutely clear that the statute applies to Mr. Sharp. The statute, the new statute, as read by the state or by the director, I think he'll tell you that we think it means that, and it tells you in their suggestion of additional authority, that under the new statute, Mr. Sharp is entitled only to a maximum of 90 days for program participation. I think you'll agree that if Mr. Sharp does in fact have a bachelor's degree, as I believe he earned while he was incarcerated, he would then be entitled to a total of 270 days of of 2020. Okay. So as the briefs were written, excuse me, and as the law stood at the time you prepared the briefs, and actually were in front of, I think it was Judge Fish, we were still looking at the 18, was that the 2018 amendment? That's correct. And you were asking that it be applied retroactively. Well, yeah. Our position, and it's- Still remains the same retroactively. The numbers were significantly less. Well, there was a debate about whether it applied to Mr. Sharp, and that's vigorously- It applied to Mr. Sharp, it just is, the question is, does it give, the statute says on or after the effective date. So the question is, it applies to all prisoners, including Mr. Sharp, but the question then is, did the particular prisoner that it applied to, did they earn it on or after the date of the statute, or did they earn it before, on or after the date of the statute? The position that the director took was that, and I think there are actually regulations promulgated after we filed our brief, but the position the director took was that it became effective, and if that's correct, then we would lose. However, there's this new statute which makes it perfectly clear that the new statute applies to program participation for everyone, for all time. It limits the credit you can get for program participation. Mr. Sharp believed he was entitled to 25 years of sentence credit when he filed his complaint. That's not an issue that we're advocating under the present statute. Somebody else might actually raise that and have some creative, inventive arguments, but what we're seeking now, in light of the new statute, is an order, as my name is, directing the director to implement the new statute without the delay that we saw implemented in the 2018 statute. Well, how can they bypass? Isn't there a process for them promulgating regulations? I mean, how can we order them to immediately issue regulations and bypass any administrative processes that they have? They have to start the administrative process. I believe in the 2018 statute, they didn't start it for at least a year, and that would harm Mr. Sharp, who's... Well, do we know for a fact that this process hasn't started since this is going into effect on January 1st? Is there any information that certainly wouldn't be in any record that we have, but that you have? There's nothing that I'm aware of, but it's possible that the attorney for the appellate has more knowledge than I do about what's going on. But there was a delay in implementing the 2018 statute. And if it had been implemented when Mr. Sharp filed the pro se complaint, and I'd become aware of it, it would have been challenging of the regulations that were finally issued in, I think, March of 2019, because we disagreed with it. But that's not what we're here... Well, I'm sorry. No, I'm... So I guess as I'm sitting here listening and thinking about this, isn't the issue that you raised in your briefs now moved then? I mean, this is a whole new statute. It hasn't been briefed. I mean, it hasn't been decided by any trial court at this point. So how can we be deciding this case? What would we be reviewing? We would be reviewing the important public policy about implementing... The Illinois rule on mootness is not as strict as the Federal rule on mootness. And this is going to happen again to Mr. Sharp. If we wait another 15 months before regulations are adopted, Mr. Sharp will have... Right. But you are arguing about a different statute. This is not this statute. Not this... I'm sorry. Not this being the amendment that is part of the motion for leave to cite supplemental authority. That's the statute I'm talking about. The supplemental authority statute. But the amendment is new. It's an amendment which is new which resolves any uncertainty about whether the 2018 amendment applies to Mr. Sharp or limits the amount or appears to limit the amount. Well, would you... But there are two... I don't like putting lawyers in positions where they make concessions. But it would seem that this amendment is a legislative indication that the legislature considered the previous amendment to be prospective only. Otherwise, I don't know why they would have passed this amendment. Well, a more cynical interpretation... Okay, let's hear the most cynical... The most cynical is that the 2018 amendment, as it was adopted, meant exactly what we said it meant, that people like Mr. Sharp would get out. And the legislature said, oh no, we didn't really mean this, we have to change it, and changed it. So he doesn't immediately get out. He only gets credit for 90 days plus 180 days for college. The Attorney General indicates or takes the view that Mr. Sharp, in January of 20... This is in paragraph 9 of the Supplemental Authority motion, can apply for 90 days of sentence credit under the new amendment. If there are regulations in January, or even emergency regulations allowing him to apply, that's true. But if we have to wait until after April 16th of 2021, Mr. Sharp will have... Any time beyond what he would be allowed credit for. That's correct. That's why it's not moved. That's why the court should resolve this. And if the Director will come before me and say, yes, we're planning on adopting regulations, nothing to worry about, just be patient, that would be great. But I suspect that the Director hasn't started thinking about that yet, and will take as long as he did or she did. Well, would you agree that the issue that was briefed, that we prepared oral argument for was whether or not the prior statute, which now would allow murderers credit for specifically, or for most assuredly, any credits earned from the date of the effective date into the future. The issue here is whether or not it applies retroactively to previously earned credits. And that issue is no longer of practical significance in light of the new statute. Why? Well, the new statute says that Mr. Sharp gets credit for 90 days for program and 180 days for college. And by the time... I hate to be cynical, but we could render a decision finding that he's entitled to all the credit that you asked for because it was, quote-unquote, they meant that it should be retroactively applied. And if he gets out immediately, then the new statute would have to be applied retroactively as well in order to supposedly nullify what supposedly took place. Correct? That's correct, and I am reluctant to believe that I'm giving anything away by saying that the legislature could change good time, which hadn't been awarded, and clarify the statute in a way that I'm sure that I would argue if I was on the other side to say, no, we only meant 90 days for set for credit and 180 days for college. I am taking an admittedly very narrow position on this. I did not expect the court and still don't expect the court to say you're entitled to sentence credit when I think all the relief that Mr. Sharp is entitled to is the issuance of regulation. And I think that we should be sure the court should take whatever action is appropriate to ensure that the director promptly issues regulation so that we don't wait until after Mr. Sharp backs it out before he can take it back into the statute. Are you referred to a March of 2019 date about some regulations? What is that date? The Attorney General will have that date for you. There are regulations issued, which I shared with you before, oral argument, which, as I read them quickly, state that you only get sentence credit for programs after the statute was adopted, which would not be... That was the 2018 amendment, correct? That's correct. Well, then, if there's something out there in the wind, whether adopted or soon to be approved, how difficult is it going to be to incorporate the new statutory authority? Well, I don't know. I'm not involved in the rulemaking process, but I don't think it's started yet, and it really took a long time for it to start with the 2018 statute. And if it had been out, we would have been challenging it as not to file the statute. Well, the regulations probably wouldn't have given, I'm just guessing based upon their argument, they wouldn't have given your client the time he wanted anyway. Right, but I think we would have been challenging the regulations rather than seeking mandamus to compel the issuance of regulations. Thank you. Thank you. Mr. Jacobson, you may proceed. Good morning. Thank you, and may it please the Court. I wanted to start by addressing kind of the last question that was asked about those regulations. Sure. They were promulgated on March 1st of this year, 2019, and as you supposed, Justice Hutchinson, they follow the interpretation of the 2018 amendment that we put forth both in the court below and in our brief. So I'm not clear on these regulations apply to what? These regulations implement the 2018 amendment to the extent that the 2018 amendment grants credit to inmates who were previously ineligible for the sentence credit modifier. So then they would be effective until January 1st, is that right? Yes, Your Honor. Of 2020? Okay. Now, are they going to have to, and this is a question that is of concern, now that they have been promulgated, do they need to be modified, amended, or do they need to start over? I'm not entirely clear on that answer, Your Honor. However, I will say that it is unclear whether or not Mr. Sharp would be entitled to the issuance of regulations at all. He could be granted this credit without the existence of a regulation. I would expect that the department was working with the inmates who were applying for these credits prior to the promulgation, because there was approximately 15 months between the effective date of the 2018 amendment and the effective date of this regulation. Well, just looking at the language of the statute and then your motion to supplemental authority, yes, the department should have regulations, but under the plain language of the statute, he probably could be granted, or he could apply for and probably be granted the time he's asking for now. When you say the plain language of the statute, Your Honor, are you referring to the 2020? Oh, the 2020. Right. We do not contest that he is theoretically eligible for up to the 90 days worth of credit under the 2020 amendment, but he will have to reapply, and the new sections 4B and 4C provide statutory requirements for an inmate to establish their qualification for... By documentation. Exactly. And if they can't provide documentation, then their credit is limited at 45 days, I think. Yes, I believe that is what is... Trying to read it as fast as I physically could at this time. Yes, and I think it's... They only have to provide an affidavit. I believe what it says is that they are only entitled... And I'm assuming upon release, whoever got released, whether it be Mr. Sharp or others, they still had what they used to know as parole based upon the date, but MSR to deal with? I would presume so, Your Honor. Okay. And that kind of gets to an issue with just... I don't believe that the promulgation of regulations is what Mr. Sharp was requesting in his complaint. That's not what he was arguing below, and that was not what was argued in the briefs here. He's requesting an immediate application of the 12 years of credit that he believes he's entitled to an immediate release. Well, if his interpretation, and before Judge Fish, his interpretation was that in order to actually get this credit, I have to know, trial judge or the warden needs to know or the director needs to know how to do that. But if it's... That's what regulations usually do. They define terms. They talk about when things happen, how many days are needed to do these things. So all of those things would be in regulations, but it wouldn't necessarily prevent somebody from getting a credit even if regulations didn't exist, would it? Exactly, Your Honor. Each facility has its own set of procedures for specifically implementing the granting and application of these kinds of credits. And I also have, if the court is interested, several administrative directives that have been promulgated pursuant to the 2018 amendment updated statute and this 2019 regulation that also talk about the granting of credit. So who would have to, in many of these where there is a provision for regulations, the regulations have to be approved beyond the entity that will use the regulations. Yes, Your Honor. I know the acronym, I believe it's JCAR, the Joint Committee on... It is that same entity. So even if the department were to immediately create regulations, there's still a lengthy process and even under the emergency process it still takes a decent amount of time and it's not guaranteed that the regulations put together by the department will actually be approved by JCAR. Do you agree with Mr. Flaxman with the issue on appeal or the issues on appeal or moot? We don't feel that it is necessarily moot. Partly this has to do with the potential effects of interpreting the 2018 amendment as Mr. Sharp requests. Interpreting that 2018 amendment as he requests potentially renders the 2019 amendment unconstitutional because under his understanding of the 2018 amendment... The franchise rights that were taken away in the 2020 amendment. Exactly, Your Honor. And that would potentially violate the ex post facto clause and that's kind of the core of one of the cases cited in our brief, Johnson v. Franzen. I know there have been several other appellate court cases since then addressing this issue. And contrary to what my colleague said I think the 2019 amendment shows confirms that the General Assembly did not intend for the 2018 amendment to grant those sentence credit modifiers to the previously ineligible inmates retrospectively because they know how to use the specific retrospective language that they used in the new section 4B of the 2019 amendment. They explicitly state that they wanted to apply retrospectively and then if, as Your Honor said earlier if they had intended the 2018 amendment to apply retrospectively there would have been no need for this 2019 amendment. And then with the canon of constitutional avoidance we're going to avoid potentially rendering this statute unconstitutional by, if you read the 2018 amendment as the state requests then it avoids any potential unconstitutionality in the 2019 amendment. I haven't read the particulars does the 2020 amendment still grant relief to convicted murderers I think it's prior to 68. Yes, Your Honor. I believe the 2019 amendment Meaning it still applies to the defendant. Yes, Mr. Sharpe or petitioner rather Mr. Sharpe is eligible to receive so it's they're retrospectively granting some of the relief that Mr. Sharpe requests. They're retrospectively not giving inmates who were previously ineligible In other words, he got his bachelor's degree before the effective date of the act. Well, I think the bachelor's degree is kind of a separate issue, Your Honor. One of the things that was amended I can't remember if it was the 2018 or this newer amendment but it added additional eligibility for credits for inmates who have completed their bachelor's and other higher levels of education because earlier I think it only dealt with high school. So he's, if he has completed bachelor's and he can provide that documentation he is theoretically eligible for additional sentencing credits under the act. Most of the credit he was asking for though before 2020 dealt with his completion of several programs within the system, I think substance abuse I read them, I just can't remember now but also he was asking for credit where he actually went in and helped other inmates accomplish education for credits. Yes, Your Honor. And he claimed to have completed about 25 years under the day-for-day system and then he was requesting the application of the modifier to that 25 years because he was already getting that credit and so he wanted the additional modifier which is the 1.25 times for pre-1993 and 1.5 times for post-1993 and so by my own calculations it's a little under 12 years additional credit and that's what's at issue here. I guess I have a question in this new provision B in the 2019 amendment that goes into effect in a couple weeks it talks about departments shall award credit under this paragraph 4 accumulated prior to the effective date of this act and an amount specified in paragraph C of this paragraph 4 to an inmate serving a sentence for an offense committed prior to June 19, 1998 if the department determines that the inmate is entitled to the sentence credit based on the documentation etc. How does this new provision affect the provision that we were discussing in our briefs? In the briefs that you submitted and that we felt was going to be the subject of the oral argument what is the effect of this paragraph on the provision I guess I don't have it right in front of me the statutory provision that was the operative provision we were discussing So the statutory provision that we were discussing in our briefs was section 4 what's now 4A in the version that you're looking at and what it does is it confirms that section 4 under the 2018 amendment was not intended to grant that sentence modifier retroactively to the inmates who were previously held So it answered our question for us, is that right? We assert that yes it does it does answer, it doesn't necessarily answer So this court doesn't have to answer the question the legislature answered the question Exactly your honor the 2018 version of section 4 the amendment itself did not contain the explicit language delineating retroactivity But has that section, again I haven't compared been stricken out, are there strikeouts to the language? In the 2019 amendment No, the 2019 amendment just added to section 4 Clarifying It's clarifying that the general assembly was only intending with the 2018 amendment to grant the credit modifier of access prospectively and then they went back and said actually we'd like to give some credit to these inmates who have completed this programming So again, we don't have to answer the question No, no your honor But it may come up again because if it was substantive and therefore should only apply prospectively Now you've taken not you personally but the statutory authority has taken away significant time credits Yes, yes your honor I do think I misspoke I think it would be best to answer that the 2018 was not retroactive and looking to the 2019 amendment as confirming that But as I said if we do that then we're opening up the door too well that was substantive so now you've taken away they gave it to us here and they just yanked it out from under us for whatever reason Mr. Flaxman has an idea obviously there may be others Yeah, I mean if this court were to determine that the 2018 amendment is to be read as he requests then yes as I said that would potentially violate the ex post facto clause but reading the 2018 amendment to only apply prospectively it is substantive and it does lack that explicit language in the amendment itself as opposed to just in the statute as amended In the amendment itself it does not say that the General Assembly intended for it to be retrospective Unless there are any further questions Thank you Well I'm not going to ask you what your plan going forward is but we'll deal with that I'll answer the question My plan to go forward is to hope that Mr. Sharp gets out in July and some other person can bring these other interesting issues before this court is open There had to be people although they're not in front of us who were out without regulations so I mean the regulations are important but I didn't read Why do you read the statute saying there must be regulations in order for him to get the credit Maybe I made a mistake Well no, there must be something that you read that made you think that I'm not saying you're right or wrong I just, I read it and it said that Director Schell probably had regulations subject to approval and it seemed that without regulations there was no way to apply for credit What about a declaratory judgment action claiming that the statute provided him with credit and the trial court dismissed it on the basis that the authorizing statute was prospective only That would be within the relief of your discretion in this pro se complaint which was very broad and should be interpreted very broadly this was a pro se claim Thank you We'll take the case under advisement There will be a recess until 1 o'clock or until the parties appear for oral argument Court's in recess